IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

**MALCOLM MARKS**

    Plaintiff,

**WASHINGTON WHOLESALE LIQUOR
COMPANY LLC**

Case No.: 1:15-cv-01714

    Defendant.

## AMENDED COMPLAINT & JURY DEMAND

**NOW COMES**, plaintiff Malcolm Marks, by and through his undersigned attorneys George A. Rose, Esquire, and Rose Law Firm, LLC, and sues the Defendant, Washington Wholesale Liquor Company LLC, and in support thereof states:

### I.  PRELIMINARY STATEMENT

1. This action for declaratory, monetary and other appropriate relief is brought by plaintiff to redress intentional violations by defendant of Plaintiff's rights secured to him by the statutory laws of the United States and the District of Columbia. This action arises under Title I of the Americans with Disabilities Act, as amended, 42 U.S.C.A § 12101 et seq. ("ADA") and the Occupational Safety and Health Act, 29 U.S.C § 660 ("OSHA").

### II.  PARTIES

2. Plaintiff (hereinafter "Plaintiff" or "Mr. Marks") is at all times material here a disabled African American male residing in Ellicott City, Maryland.  At all times relevant herein,

1

Plaintiff has been employed by the Washington Wholesale Liquor Company, LLC ("WWLC") as helper.

3. Defendant Washington Wholesale Liquor Company, LLC (hereinafter "Defendant" or "WWLC") is a limited liability company registered in the District of Columbia with its principal place of business as 2800 V Street, NE, Unit E, Washington DC 20018. WWLC sells spirits and liquor to wholesale purchasers in the District.

### III. JURISDICTION & VENUE

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 1132(e), all of which provide for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

5. Venue is proper in this district under 28 U.S.C. *§1391(a) (2),* and *§1391(b) (2)* because Defendants are located in this district and the events or omissions giving rise to this claim occurred in this district.  Also, venue is proper in this district under 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practices were committed in this district; the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On June 30, 2014 Plaintiff timely filed charges of discrimination against WWLC with the Equal Employment Opportunity Commission (EEOC).  On or about November 24, 2014, Plaintiff's EEOC Charges were transferred to D.C. Office Of Human Rights ("DCOHR") for processing. On June 29, 2015, DCOHR issued Plaintiff with a Dismissal of the Charge and Notice of Right to Sue.  Plaintiff filed this complaint within (ninety) 90 days after receiving the Dismissal

Notice from DCOHR. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

## V. FACTUAL ALLEGATIONS

7. In August 2010, Defendant hired Plaintiff as a helper. Plaintiff's primary job duties and responsibilities as a helper involved accompanying the delivery truck driver on delivery assignments and assisting with the loading, off loading and delivery of liquor to Defendant customers.

8. At the time of his employment with Defendant, Plaintiff had a disability in that Plaintiff could not use his right arm which was obviously paralyzed. However, Plaintiff was a customer of Maryland State Department of Education, Division of Rehabilitative Services (DORS), a "training and placement facility that works with individuals with moderate to severe documented disabilities in hopes for them to obtain and/or maintain independence."

9. In May 2011, Plaintiff was referred to "Occupational Therapy" for a worksite assessment by DORS. On or about June 21, 2011, an on-the-job worksite assessment was conducted, which included observation of Plaintiff performing his daily job tasks for Defendant. Based on this worksite assessment, DORS determined that Plaintiff needed a motorized stair climbing hand truck to carry out the essential functions of his job effectively and reduce the risk of injury. Consequently, DORS acquired and provided Plaintiff with a motorized stair climbing hand truck to carry out the essential functions of his job.

10. Sometime after November 2011, Defendant approved Plaintiff's request for reasonable accommodation to provide a secured area for the motorized stair climbing hand truck to be stored and charged when not in use by Plaintiff.

11. In March 2012, Plaintiff informed one of his immediate supervisors, Mike Howe, that he needed a storage area for his motorized hand truck, and a power source in the warehouse and truck (in case the hand truck battery died while Plaintiff was out at work without any access to a power source (which is also a cigarette lighter.) In this same month, Plaintiff informed Mike Howe that the power source installed in Plaintiff's work truck (truck 906) required repair. A few weeks after Plaintiff's request, Plaintiff followed-up with the shop mechanic and the shop mechanic told Plaintiff that Mike Howe directed the mechanic not to fix the power source, which Mike Howe knew Plaintiff did not use.

12. On or about May 15, 2012, Plaintiff filed a grievance report against Defendant because Mike Howe directed the mechanic not to fix and/or order the power source cigarette lighter in Plaintiff's truck, truck 806. Shortly after this grievance report was filed, Defendant fixed the power source/cigarette lighter in Plaintiff's truck.

13. On or about August 1, 2013, Plaintiff contacted his supervisor, Karl Fisher, and informed him that he could not deliver products to a certain customer (Wonderland Ballroom) due to the fact that Wonderland Ballroom did not have a handrail to support Plaintiff's movement and maneuvers to bring the products down the steps; Plaintiff feared for his safety due to his disability with the paralysis of his right hand. Earlier, in July 2013, Plaintiff also brought to the attention of his supervisor Karl Fisher, that the lack of handrail was a safety issue with the steps being very steep, and Occupational Safety and Health Administration (OSHA) requires the customer to have handrails installed on the steps.

14. In response to Plaintiff's safety concerns with the lack of handrail at the Wonderland Ballroom downstairs delivery site, Defendant targeted Plaintiff and told Plaintiff that "if he required any additional accommodations to do his job he would need to provide me with

medical documentation". Defendant, by and through its agents, servants, and/or employees, including Jason Savage, had never before asked Plaintiff to provide medical documentation for his disability.

15. On or about August 29, 2013, Plaintiff filed a complaint with the Occupational Safety and Health Administration (OSHA) against Wonderland Ballroom under pursuant to Wonderland Ballroom's violation of OSHA under the relevant rules for Wonderland Ballroom's failure to have standard railings or handrails connected to its liquor delivery stairwell(s). On that same day, email correspondence between Plaintiff's supervisors, Defendant's employees Jason Savage and John Hild, stated their plans to "discuss option and discipline since we are limited to what we can do to someone who files with OSHA" in relation to Plaintiff's filing of the complaint with OSHA. However, Plaintiff went out on leave of absence on or about September 3, 2013, and did not return to work until November 2013.

16. On or about November 26, 2013, Plaintiff contacted his supervisor James Lundstrom regarding safety concerns about another customer (A N D), Plaintiff had complained "numerous times about this location not having any handrails on their steps that go downstairs", "to support himself while taking the goods on the handcart", "to ensure he does not slip and fall for any reason when going downstairs without something to grab and support himself". Plaintiff also told Mr. Lundstrom that: "if the safety issues do not get resolved that he will have to go to OSHA to ensure that the concern gets resolved in one way or another."

In late November 2013, email correspondence circled between Plaintiff's supervisors, and Defendant's employees Jason Savage, Mike Howe, and John Hild, concerning the legal "avenues" Defendant could take and whether or not Defendant should get "legal assistance", in response to

Plaintiff's indication that Plaintiff would again complain to OSHA if the safety issue with the lack of hand rail on the deliver stairs.

17. On or about February 14, 2014, the motorized hand truck became inoperable and needed repairs. On or about February 18, 2014 Plaintiff informed his supervisor Jimmy Lundstrom that the motorized hand truck was inoperable and requested that the Defendant grant approval for a service technician to visit the jobsite to repair the motorized hand truck.

18. Subsequently, Plaintiff asked his supervisors repeatedly to allow a technician to have the motorized hand truck repaired; however, Plaintiff was told that his supervisors did not get authorization to have the repairs done. However, Defendant falsely claimed that "We have not afforded him a ADAA accommodation and we did not provide the equipment". Defendant subsequently requested that Plaintiff provide medical documentation on his disability and Plaintiff's need for continuing use of the motorize hand truck in performing his job duties.

19. After over four (4) months working under unusual physical strain, and in fear of accident from maneuvering with the manual hand truck, sometime in June 2014 Plaintiff took action to transport and/or deliver the motorized hand truck to a repair company for service and repairs. Plaintiff paid out of pocket for the repairs. Before this, on or about May 13, 2014 Plaintiff filed grievance with this collective bargaining unit, against the actions of Defendant actions to deny Plaintiff's request for reasonable accommodation.

## VI. COUNT ONE
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

20. Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

21. Plaintiff is a disabled person as intended by the ADA; in that, he has a physical impairment that substantially limits one or more major life activities, or was regarded as having such impairment, as set forth under the ADA.

22. Plaintiff is otherwise qualified to perform the essential functions of a helper, with or without reasonable accommodations by Defendant.

23. Defendant is a covered entity under the ADA.

24. Defendants knowingly, intentionally, recklessly or negligently discriminated against the Plaintiff because of his disability and/or handicap.  Defendant failed to provide reasonable accommodation to a qualified person suffering a disability that affects one or more of life's major activities, who is capable of performing the duties and/or work for Defendant with or without the reasonable accommodations, when such reasonable accommodations will not cause a financial hardship on the Defendant.

25. As a direct and the proximate result of the Defendant's acts and/or omissions the Plaintiff sustained humiliation, embarrassment, and unnecessary stress and anxiety, for which the Defendant is required by law to provide a remedy.

## VII.   COUNT TWO
## RETALIATION

26. Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

27. Defendant intentionally, with malice and reckless indifferent to federal, state, and local laws prohibiting retaliation against employees for protected activities, retaliated against Plaintiff because Plaintiff complained and reported that he would complain to OSHA about Defendant's customers who did not have handrails supporting their delivery steps, which the customers were required by law to install for safety purposes.

7

28. The retaliatory conduct Plaintiff was subjected to, detailed in the foregoing paragraphs, was causally linked to Plaintiff's protected activity of reporting the illegal situations where handrails were not installed on steep delivery steps, posing a danger and safety risk to users.

29. The retaliatory actions taken against Plaintiff constituted adverse employment actions and altered the terms, conditions and privileges of his employment with Defendant.

30. Defendant is fully aware of the retaliatory acts against Plaintiff detailed in the foregoing paragraphs, and was deliberately indifferent by disregarding the known or obvious conduct toward Plaintiff, and actually participated in the retaliation against Plaintiff.

31. As a direct and proximate result of the discriminatory retaliation, Plaintiff has suffered injury to his reputation, injury to his career, pain, mental anguish, humiliation, and faces irreparable harm and future losses.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court enter judgment in Plaintiff's favor and grant Plaintiff the maximum relief allowed by law, including, but not limited to;

(a) compensatory damages;
(b) declaration that Defendant's actions violated the ADA and OSHA
(c) attorneys' fees, costs, pre- and post-judgment interest, and such other relief as are just and equitable under the circumstances.

Respectfully Submitted,

/s/ George A. Rose

George A. Rose, Esq.
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, MD.  21202
Telephone #: 410-727-7555
Facsimile #: 410-320-0962
Email: grose@roselawfirm.net
*Attorney for Plaintiff*

## **JURY TRIAL PRAYER**

Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

*/s/ George A. Rose*
_____
George A Rose, Esq.